Yes, Your Honor. Good morning, Your Honors. I'm William Frick for both Mr. Sings. The, I believe that the issue here is, is the right to be married and it's a, it's a protected liberty interest. Gin v. Kerry dealt with it in the immigration context. I can hear you, but it would be a little less effort if you're a little closer to the microphone. Thank you. Of course. I believe that this, the issue in this case is due process in deciding a matter of fundamental liberty and that is the right to be married and the right to live with your spouse. Gin v. Kerry is a case in which five judges in the Supreme Court found that there was a, there was a liberty interest in marriage and also Obergefell v. Hodges. Counsel, I thought that your argument was that the wrong agency adjudicated the matter. How, how is that, how does that relate to the question of a fundamental right to be married? Well, it's not, it's not so much that the wrong agency has adjudicated it. It's that there is no forum for him to adjudicate it because... Well, there was a forum. There was a forum. I mean, it's not like you didn't have one. You simply let the rights go by. The, well, he wasn't married. The, the... And the whole problem here is, is that we never get to a theory of yours about a constitutional right to marriage if, if you've sued a, to ask for relief in a forum that can't give you any relief. So isn't the first issue, really, who, who should give you, who do you have to go to for the relief? Do you, are you, do you have to go to the IJ and the BIA or do you have to go to the USCIS? Well, we're, we're precluded from going to the IJ because it's been over 90 days. Right, well, but you weren't originally, could have. He, neither one of these men were married. In fact, isn't there, is there, is there any discretionary possibility that, that the AJ could reopen it if they wanted to? There is a discretionary... So you do have that option still? We, we do have that option still, Your Honor. But if due process requires a right, a right to be heard, not, not an exercise of discretion and... Well, you have the right to be heard. Well, we, we had the right to ask for discretion, not, and, and I believe that most of those cases are denied before, past 90 days. Well, a right to be heard doesn't mean a right to win. But if you, but you do, but it is a right, Your Honor. It is a right to be heard and if the, if the, the EOIR... Yeah, but you can, but you can, you can waive that. They're waived, it's waived all the time. People plead, people plead guilty. They waive their rights to trial. They have a constitutional right to a trial and they waive them. But people decide to represent themselves under FREDA. They waive their Sixth Amendment right to counsel. But, Your Honor, nobody here is waiving that right. He just wants a forum. Both of these men want a forum in which their adjustment of status can be adjudicated. He had a forum. He didn't take advantage of it. He, he was not, you, you only are allowed to ask to reopen 90 days after an order of removal. Neither one of these men were married during that period. So they were precluded from going back to the EOIR by that regulation and that's why we're seeking a forum. It was an after-acquired right. It was, it was, but it's still a fundamental right. But whether you got a fundamental right or not, I mean, I could have a fundamental right of religion and I could say, you know, I'd like, I live in Colorado. I'd like the Alaskan court to decide that for me, please. And the Alaskan court might say, well, you may or may not have that right, but you can't, you can't bring it in the Alaskan court. And so the first question is you got to decide who can give, who can give the relief, and then we'll worry about the remedy. And it seems to me your biggest concern here, the one I'm at least most concerned about, is you've asked for relief from the, from the USCIS, the Department of Homeland Security, which I don't, I have real doubts whether they've got the authority to give you any relief. So before we worry about whether you have a right, a substantive right, let's worry about who you're asking for the relief from. That, that is an issue, Your Honor, and we believe that probably both agencies have the right under the regulations in the law. Well, how, if you think both agencies have that right, then how do you, how do you get around H.C.F.R. 1245-2, which says that in the case of an alien who's been placed in a deportation proceeding, which your two clients have, the immigration judge has exclusive jurisdiction. How do you get around that? Because he's an arriving alien, because people who are... But he, but he's not, because the arriving alien... Well, he's, he's in the position of an arriving alien. An arriving alien has been defined as somebody who has come into the U.S. at a port of entry. There's another definition that's not relevant here. And one of your clients doesn't even allege they came in through a port of entry. The other of your clients, most the time, in several hearings, said he did not come in through a port of entry. Once he said, well, maybe I did, but I'm only doing that on information of belief. But the district court basically said, not maybe quite as explicitly as he could have, but essentially said, no, I don't believe that. And you didn't appeal that. And, and those are, those are, those are issues that the agency should adjudicate. Which agency? Any agency. Any agency that we can get before. You can't get before. You're asking for, it seems to me, you are asking for relief from the Department of, I mean, from the Department of Homeland Security, USCIS, and that, that's the relief you're asking for. And I don't, and my question again is, how could we give you that forum in light of HCFR 1245.2? That's the question. Because, because the case law says that an applicant for adjustment of status should be assimilated into the position of an arriving alien. He should have the same rights as an arriving alien. And there's an exception to that, to that regulation for arriving aliens. But all of the cases that have talked about assimilation, talk about people who have gone through a port of entry, and people who are lawful permanent residents. And your clients are neither lawful permanent residents, nor have they entered through a port of entry. So, so it seems to me that those cases are distinguishable. Actually, my, both of my clients tell me that they did come through. That's not what the record, we can't rely on a private conversation between you and your client. That's not what the record shows. The record, the record does show that way, the I-45 that we filed for both of these men indicates that they both came in as visitors. The reason that they, that's not the same as being paroled into the United States, which is the, which is part of the definition of an arriving alien. A, a somebody who comes here on a tourist visa and then overstays the visa is not an arriving alien. But for purposes of adjustment of status, we think that the case law indicates that they should be put, they should be assimilated into that position. That's, that's why they just overstayed their visa. At best. One of them said that he was here, that he came in lawfully under, you know, came in through a port of entry on information and belief. And as the district judge said, never heard of somebody who said that he, that he, that he doesn't know how he got here, but thinks he got here on information and belief. Well, those are, those are questions that the agency could adjudicate. And the, the standard is, are they believable about how they came in? You can't, you can't get before USCIS. That's the problem, counsel. Well, we can't, but we can't get before the EOIR either. And, and there, we need a forum. And this is a fundamental right, a fundamental liberty interest, and not to have any procedural due process. Maybe we ought to just give you the forum of the United States Supreme Court and say file an original jurisdiction up there. I mean, just because you need a forum doesn't mean you get one. But with a fundamental liberty interest, someone should have procedural due process. The fundamental interest being what? The right to marry and the right to live with your family. And he's, he got married. He got married. And included in that is the right to reside with your family. I don't, I don't know what, what case supports that proposition. A Dim B. Carey and... That says that you have a right to live with your family? Yes, that there are... Does that apply to prisoners who are married? Well, there's... Does it apply to servicemen who are married? I mean, those are... Does it apply to aliens if one of them is a U.S. citizen and the other one, the other one sneaked across the border? I think all of those, all of those people have due process. And they have a, you know, a serviceman joins because he wants to join. A prisoner has due process before he's removed from his family in the criminal court. We have no forum. Because it's been more than 90 days. Right. Counsel, you had a forum. But... You didn't take advantage of it. And then your client got married after that. They, I don't think they even knew their wives during that 90 day, that brief 90 day window. They had a forum as to whether they could lawfully stay in the United States. They can't. Well, but... They didn't file the I-130. That was the right, that was the right thing to do. But you can't file an I-130 if you're not married. And they weren't married until after that 90 days. So... You have a little bit of a sequencing problem. And we feel like this is a fundamental liberty interest. Alright, we've got that point. So why don't you save this remainder of your time for some rebuttal. Okay. Thank you. We're happy to accommodate both of you. Thank you, Your Honor. If ever you'd like to do it. We were both prepared. So it's very hard to give up. That's fine. So I'm just going to start briefly, Your Honors. And just address the question raised regarding fundamental liberty interest. And then my... I'm sorry. Would you identify yourself just for the record?  My name is Gisela Westwater. I'm here from the Department of Justice. Representing... The specific interest was the Avatar Singh matter. And I'm representing the appellees. The Department of Homeland Security in that matter. Okay. In these two cases, however... So is it... Are you just on the Avatar case? Or on both cases? Right now on both cases, Your Honor. Okay. That's where my name appeared on the list for today. Regarding a fundamental liberty interest and the due process claims. That were raised basically today in court. I would just like to point out the case Iyasu. Which is the 9th Circuit case. And in that case, there was a fundamental interest. And that was Iyasu claimed to be a U.S. citizen. And that he lacked a forum in which to raise this. And so he was seeking actually through a district court but through a habeas petition. And this court found that that was the inappropriate method for raising it. And even though in that case his 90 days to reopen his removal proceedings had passed. This court said you are entitled to the process that you get. And the process is you go back and you seek sua sponte reopening to reopen those proceedings. And yes, it was not the of right during the 90 days. That period had passed. And once the alien had done that then the alien would have the ability to appeal if that was a wrongful decision because of whatever reason because he had not made a frivolous claim to U.S. citizenship. But this court in many cases has simply said there is a process. There is a process set out. We look at the purpose of REAL ID and IRERA. It is to really channel efforts and the ways that aliens seek relief. That was the purpose of these. And this court has found that there is a process in place and part of that is an alien who is in removal proceedings. Both of these aliens remain in removal proceedings until their orders are executed. And the process and the place for them under regulation to pursue any late acquired claims for adjustment of status is through under the regulation applying for reopening. At this time I will pass it to my colleague. Okay, thank you. You know, I've got to say that I've heard a lot of arguments with two people arguing. You're nearly the first time that the first person didn't take all the time. So you deserve great kudos for respecting your colleague. I appreciate the respect. May it please the court, Stacey Young for the government. Just to reiterate my colleague, Mr. Singh's attempted end run around the legally prescribed process for applying for adjustment for status must fail. As an alien in removal proceedings, he is not an arriving alien. Mr. Singh, both Mr. Singh, were required by regulation to apply for adjustment of status with an immigration judge. That's clear in the pertinent regulation, not USCIS. The district court was correct in finding that USCIS lacked jurisdiction over the applications. So what remedy does he have now? Is there any remedy? Well, he is permitted to go back to an immigration judge and file for reopening. He's late on that one, isn't he? He's late on it. He had 90 days after the final order of removal was issued, but an immigration judge is permitted pursuant to the regulation to reopen Suis Ponce. Can you give that regulation some insight to us? Sure. That is 8 CFR section 100 3.2 C2. He can go directly to the immigration judge? That's correct. Or to the BIA. He can ask them to reopen the removal order. I thought he had to go to the BIA, but no? Well, the BIA did confirm the immigration judge's order, so I suppose in this case he would have to go to the BIA. Is there any possibility for prosecutorial discretion for either of these gentlemen? Well, it's possible that either plaintiff could join with the government and they could both seek reopening before. Has there been any communication along this line? There has not, Your Honor, to my knowledge. Directly to the district court? That's correct, Your Honor. To my knowledge, the plaintiff has not approached the government and proposed such a move. And if either plaintiff were to the government, it would have complete discretion as to whether it would join in a motion to reopen. Is there any hint that either of these gentlemen engaged in any kind of wrongful activity while they've been here in the United States? One, Kalvinder Singh was prosecuted for insurance fraud while he was here. I believe that Avtar Singh was also prosecuted for a crime as well. I don't know the details about that. Prosecuted and convicted or acquitted? He pled guilty and the conviction was later reduced to a misdemeanor. But do you think both have gotten convictions? I can't speak to whether Mr. Avtar Singh was convicted. My colleague can. So you believe that both...well, that's not before us now. Correct. Okay. I was just curious whether there was, in line with Judge Bybee's question, whether there was any other remedy. Prosecutorial discretion is always on the pus. It's always an avenue. Correct. If the circumstances are right. I should add that Kalvinder Singh did admit to committing asylum fraud as well. And if I may just quickly bring up the issue of whether there is a right to marriage at stake in this case, there absolutely is not. Both individuals are already married. There is no threat from the government to their marriage or to their right to get married. Opposing counsel invoked... So you're not arguing that there isn't a right to marriage. In fact, we don't need to address that case here. There absolutely is a right to marry. It simply isn't invoked here because both marriages were entered into before these cases. With respect to Din V. Carey, which is a Supreme Court case that was issued in 2015, the Supreme Court didn't even reach the issue of due process or the right to marry. That case was resolved simply on whether a visa denial issued by a consular officer satisfies the facially legitimate and bona fide test. That case is completely inapposite. Here, what we have is a very simple regulatory interpretation. The regulation that is at issue is 1254.2, and that regulation couldn't be more clear. If aliens like both Mr. Singhs are in removal proceedings, and if they do not qualify as arriving aliens, which neither does, they can only seek reopening from an immigration judge, not from USCIS. For that reason, the district court in both cases issued the correct decision, and we ask this case to uphold them. If this court has nothing further, the government rests on its briefs. Thank you. Thanks to both of you. Just a couple of minutes, Your Honor. The Eyalsu case that counsel mentioned, he was a U.S. citizen at the time that 90 days started to run after his removal order. That's different than this case because neither of these Mr. Singhs were married for years after their removal orders, so they did not have that 90-day window in order to take advantage of it. With regard to a fundamental right to marry, and especially the case Din v. Carey, I believe that four of the judges in that case indicated that there was a fundamental liberty interest, a fundamental liberty interest in living with your spouse, and the other five judges were split. Two of the judges said that they're not reaching this issue, and I believe the other three judges said there was no fundamental liberty interest, but if you look at that, it's more undecided than it is decided, but there's a plurality that indicates that there is a fundamental liberty interest. There are other cases in my brief as well. Thank you. I think we understand your argument. The matter is submitted, and thank you both very much, and I regret any last-minute changes in the way we decided to hear the case.
judges: Ebel, Paez, Bybee